**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ABDUL YUSUF HARDY | : | |
| | : | |
| Appellant | : | No. 832 EDA 2019 |

Appeal from the PCRA Order Entered February 25, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0428501-1993,
CP-51-CR-0428551-1993, CP-51-CR-0428571-1993,
CP-51-CR-0428591-1993

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ABDUL YUSUF HARDY | : | |
| | : | |
| Appellant | : | No. 835 EDA 2019 |

Appeal from the PCRA Order Entered February 25, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0428501-1993,
CP-51-CR-0428551-1993, CP-51-CR-0428571-1993,
CP-51-CR-0428591-1993

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ABDUL YUSUF HARDY | : | |
| | : | |
| Appellant | : | No. 836 EDA 2019 |

Appeal from the PCRA Order Entered February 25, 2019

In the Court of Common Pleas of Philadelphia County Criminal Division at No(s): CP-51-CR-0428501-1993, CP-51-CR-0428551-1993, CP-51-CR-0428571-1993, CP-51-CR-0428591-1993

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ABDUL YUSUF HARDY | : | |
| | : | |
| Appellant | : | No. 837 EDA 2019 |

Appeal from the PCRA Order Entered February 25, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at No(s): CP-51-CR-0428501-1993, CP-51-CR-0428551-1993, CP-51-CR-0428571-1993, CP-51-CR-0428591-1993

BEFORE: PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED FEBRUARY 23, 2021**

Appellant Abdul Yusuf Hardy appeals from the order dismissing his fourth Post Conviction Relief Act[1] (PCRA) petition as untimely and meritless. Appellant contends that the PCRA court erred because his "***Brady/Giglio***"[2] claim established a time-bar exception and required a new trial. We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] ***United States v. Giglio***, 405 U.S. 150 (1972); ***Brady v. Maryland***, 373 U.S. 83 (1963).

This Court previously summarized the factual background of Appellant's underlying conviction as follows:

In October of 1992, [Appellant] and two other men allegedly pistol-whipped Demond Jackson.[fn4] Approximately one month later, [A]ppellant was socializing in Jarrett's bar. Attoy Davis and Hassan Muldrow were also present in the bar. Davis had previously informed Muldrow that [A]ppellant had participated in striking Jackson. Muldrow, who was intoxicated, approached [A]ppellant and confronted him with regard to his role in the beating. A heated argument ensued during which Muldrow's friends, Davis, Sean Ballard[fn5] and Bernard Beard became involved. However, further conflict was avoided by the intervention of other bar patrons and/or acquaintances of the parties.

[fn4] One of the men whom [A]ppellant accompanied accused [Demond] Jackson of shooting his nephew, Harry. [Demond] Jackson denied committing this crime.

[fn5] Earlier that evening Sean Ballard and his friend, Ron Wyatte, had an altercation with Stanley Williams, one of [A]ppellant's co-defendants. During this incident, Ballard spoke with Williams' friend, Eric Crawley. Wyatte had been drinking and believed that a confrontation occurred. As a result, he intervened and punched or shoved Crawley. Williams came to Crawley's defense, punched Wyatte and displayed a .38 caliber weapon. Wyatte then left. Ballard purportedly smoothed things over between himself, Crawley and Williams by explaining that Wyatte had been drunk.

Ballard spoke with Attoy Davis regarding the argument with [A]ppellant. Ballard then departed. Upon exiting the bar, Sean Ballard was seen approaching or talking with a group of several men. Moments later, he was fatally shot in the abdomen by one of the men in the group.

Shortly after the argument in the bar had ended, Beard, Muldrow, and a third friend, Earl Spearman, also left the bar and got into Beard's vehicle.[fn6] Spearman, who was seated in the passenger seat heard gunshots and turned to see [A]ppellant firing upon the vehicle. Although wounded, Beard was able to drive a short distance before he lost consciousness and caused the car to crash. Spearman emerged from the shooting and accident unscathed.

Unfortunately, Beard and Muldrow sustained multiple gunshot wounds and died as a result of their injuries.

[fn6] Beard, Muldrow and Spearman left the bar before Sean Ballard.

Appellant was ultimately apprehended several months later and charged with various offenses arising out of the shootings. Three other men, Mack "Quidar" Alderman, Stanley Williams and Mohammed El-Akram were also arrested in connection with the above shootings. The charges against the four men were consolidated and a joint trial was held from May 23 through June 17, 1994.[3] The jury convicted [A]ppellant of the offenses involving Beard, Muldrow and Spearman as well as the weapons' violations. Appellant was acquitted of conspiracy and the murder of Ballard, however.

*Commonwealth v. Hardy*, 677 A.2d 1264, 02444 Philadelphia, 1994, at 1-3 (Pa. Super. filed Feb. 26, 1996) (unpublished mem.) (some footnotes omitted). On June 17, 1994, after the jury was unable to reach a decision on the application of the death penalty for Appellant's murder convictions, the trial court sentenced Appellant to two consecutive terms of life imprisonment.

_____

[3] We add that at trial, the Commonwealth introduced Demond Williams' prior inconsistent statement to police regarding "the pistol-whipping incident" as substantive evidence of Appellant's motive for the shooting. *See Hardy*, 02444 Philadelphia, 1994, at 8-10 (rejecting Appellant's direct appeal claims that the trial court erred in admitting prior bad acts evidence and that Demond Williams' prior statements should not have been admitted as substantive evidence).

In addition to Spearman's testimony identifying Appellant as the person who shot into the car, the Commonwealth presented evidence from Clarence Reeder about the fight inside the bar and the shootings, as well as Reeder's identification of Appellant as one of the shooters.

This Court affirmed the judgments of sentence on February 26, 1996, and our Supreme Court denied allowance of appeal on November 27, 1996. *Commonwealth v. Hardy*, 686 A.2d 1308 (Pa. 1996). Appellant did not file a petition for writ of certiorari in the United States Supreme Court.

Appellant unsuccessfully sought post-conviction relief in a timely, first PCRA petition, as well as two untimely PCRA petitions.[4] Appellant, through present counsel, filed the instant PCRA petition, his fourth, on January 8, 2018, alleging:

> 12. The petition is "timely" under the exception to the PCRA for governmental interference based on the suppression of exculpatory or impeachment material under *Brady*/*Giglio*. The materials involved were part of the public record but not available to [Appellant] who was incarcerated. [Appellant] was only able to get the materials when a friend of the family hired a lawyer to represent him.
>
> 13. Based on exceptional circumstances, I respectfully request the Court order the production of the prosecution's H-File[5] and the production of exculpatory or impeachment material relative to all witnesses including [Demond] Jackson, Reeder and Spearman under *Brady*/*Giglio*.
>
> 14. The issues which I have raised in this petition have not been finally litigated or waived because of the following: claims of ineffective assistance of counsel must be presented in a PCRA

---

[4] Appellant was appointed PCRA counsel for his first PCRA petition. *See Commonwealth v. Hardy*, 3753 Philadelphia 1998, at 3 (Pa. Super. filed Feb. 2, 2000). Appellant also unsuccessfully sought relief in a federal habeas corpus proceeding in 2003.

[5] Our Supreme Court has referred to an "H-file" as an investigating homicide detective's file. *See Commonwealth v. Natividad*, 200 A.3d 11, 17 (Pa. 2019).

petition. Materiality of **Brady** material was discovered within the last 60 days.

PCRA Pet., 1/8/18, at 2-3. According to Appellant, the Commonwealth suppressed information that Demond Jackson and Reeder engaged in prior bad acts, had prior convictions, and obtained some benefit for testifying against him.[6] **See** Mem. of Law, 1/8/18, at 15, 21-22.

On September 17, 2018, the Commonwealth filed a motion to dismiss Appellant's PCRA petition. The Commonwealth claimed that Appellant's alleged new information concerning Demond Jackson did not establish an exception to the PCRA time bar. Mot. to Dismiss, 9/17/18, at 6.

The Commonwealth further asserted that Appellant and his present counsel "were well-aware that Demond Jackson had testified in the other matter more than a year before" filing the instant petition in January 2018. **Id.** In support, the Commonwealth attached to its motion to dismiss a letter to Appellant from Appellant's present counsel dated November 28, 2016, in

---

[6] Although Appellant referenced Spearman in his petition, Appellant did not assert that he discovered new information regarding Spearman. Instead, citing the transcript of his own trial, he asserted that Spearman's identification of Appellant was unreliable. **See** Mem. of Law, 1/8/18, at 22.

We add that while Appellant cited to various trial transcripts that he allegedly attached to his PCRA petition, Appellant did not provide those exhibits. Similarly, in his brief in this appeal, Appellant cites to transcripts that were allegedly included in a reproduced record. However, those citations do not correspond to any part of a trial transcript. Lastly, we note that the trial record and trial transcripts transmitted to this Court are incomplete.

which counsel discussed Demond Jackson.  ***Id.*** at 6 & Ex. A.  The Commonwealth stated: "[Appellant] apparently circulated this letter among his fellow inmates (and thereby waived attorney-client privilege), because at least one of the other defendants in the unrelated matter has attached it to his court filings, thereby making it accessible to the Commonwealth."[7]  ***Id.*** at 6 n.2.  The Commonwealth did not discuss Appellant's claim that it suppressed information regarding Reeder.[8]

On November 19, 2018, Appellant filed a response in opposition to the Commonwealth's motion to dismiss.  Appellant restated his claims that he timely filed his PCRA petition in light of the Commonwealth's ***Brady*** violation and that the new information required a new trial.  Opp'n to Mot. to Dismiss, 11/19/18, at 3-12.  Appellant also denied the Commonwealth's assertion that he was aware of the information regarding Demond Jackson for more than one year before filing the instant PCRA petition, stating:

---

[7] Among the results of a Westlaw search for "Francisco Azcona" is ***Commonwealth v. Trice***, 2308 EDA 2017, 2018 WL 5783844 (Pa. Super. filed Nov. 5, 2018) (unpublished mem.).  The results for a Westlaw search of "Demond Jackson" also lists ***Trice*** as a result, as well as an unpublished memorandum in ***Commonwealth v. Abdullah***, 2029 EDA 2016, 2017 WL 2261660 (Pa. Super. filed May 23, 2017) (unpublished mem.).  As noted below, Appellant's present counsel asserts that she represented Naree Abdullah at some point during the prosecution of Abdullah for the killing of Azcona.

[8] The Commonwealth further asserted that even if Appellant timely presented the information, he could not prove prejudice requiring a new trial because there was overwhelming evidence of his guilt based on the identifications by Reeder and Spearman.

> It's fair to say that [Appellant's present] counsel represented Naree Abdullah at some point in the litigation [involving the killing of Azcona]. It's fair to say that [counsel] was aware that Mr. Abdullah claimed that Demond Jackson was a liar. Even so, [counsel] could not reasonably believe that the Commonwealth would use a known liar to testify in two trials. Furthermore, the [PCRA c]ourt should hold a hearing to determine how [the Commonwealth] obtained a copy of a letter which was intended to be attorney-client privileged work product.

*Id.* at 3.

On January 28, 2019, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss the instant PCRA petition. In its notice, the PCRA court checked a box next to the statement that "[t]he issues raised in the [PCRA] petition filed by your attorney are without merit." Notice, 1/28/19. Appellant filed a response that restated the issues raised in his PCRA petition and opposition to the Commonwealth's motion to dismiss.

On February 25, 2019, the PCRA court entered the order dismissing Appellant's petition "based upon [l]ack of [m]erit." Order 2/25/19. The PCRA court did not address Appellant's claim that the Commonwealth's inclusion of the November 28, 2016 letter from his present counsel violated an attorney-client privilege.

Appellant separately filed timely notices of appeal at each of the above-captioned trial court docket numbers.[9] The PCRA court did not order a

---

[9] Each of the four records involved in this case contain an electronically filed notice of appeal stamped by the clerk of the court as accepted for review at four different times. Moreover, present counsel represented that she separately filed her notice of appeal in all four cases. The fact that all four

Pa.R.A.P. 1925(b) statement but filed a Rule 1925(a) opinion asserting that Appellant's petition did not qualify for a timeliness exception and, in any event, failed to state a basis for PCRA relief.[10]

Appellant, in his initial brief, presents the following issue for review:

> The PCRA court abused its discretion when it denied the PCRA petition without first holding an evidentiary hearing into the claim that the convictions were the product of **Brady**/**Giglio** violations.

Appellant's Brief at 2 (footnote omitted and some formatting altered).

Appellant asserts that his claims that the Commonwealth failed to disclose information to impeach Demond Jackson and Reeder stated an exception to the PCRA time bar and established a basis for either a new trial, or a PCRA evidentiary hearing. Concerning the timeliness of his petition, Appellant cites **Wearry v. Cain**, 136 S. Ct. 1002 (2016), for the proposition that "**Brady**/**Giglio** claims cannot be time barred or defaulted in any event because such claims are regarded as hidden defects for which the prosecution is solely responsible." **Id.** at 28. Further, relying on **Dennis v. Sec'y, Pennsylvania Dep't of Corr.**, 834 F.3d 263, 285 (3d Cir. 2016), Appellant contends that "defense counsel has no obligation to hunt for **Brady** material, and that the U.S. Supreme Court has never stated that 'due diligence' is an element of a **Brady** claim." **Id.** Essentially, Appellant contends that if "the

---

notices of appeal bore all four trial court docket numbers does not affect Appellant's compliance with **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018). **See Commonwealth v. Johnson**, 236 A.3d 1141, 1144 (Pa. Super. 2020) (*en banc*).

[10] The PCRA court did not address Appellant's claim regarding Reeder.

Commonwealth suppresses evidence vital to the defense, the Commonwealth may not defend the claim on an assertion that [a defendant] did not act with due diligence." *Id.*

As to the merits of his claims, Appellant asserts that the information impeaching Demond Jackson and Reeder would have changed the outcome of the trial. Appellant contends that Demond Jackson's testimony was critical to the Commonwealth's theory that Appellant had motive to engage in the altercation at the bar and shoot into the vehicle. *Id.* at 34. Moreover, Appellant claims that the impeachment of Reeder's identification of Appellant as one of the shooters could have changed the outcome of trial because Spearman's testimony identifying Appellant as the person who shot into the car was not worthy of belief. *Id.* Appellant maintains that there was evidence indicating that he was not armed when he was in the bar, that he left the bar with a female before the shooting, and that there was no evidence indicating where he could have obtained a firearm before the shooting. *Id.*

The Commonwealth responds that Appellant cannot establish a PCRA timeliness exception. Specifically, the Commonwealth emphasizes that because Appellant relies on information from separate and unrelated cases, there was no governmental interference. Commonwealth's Brief at 8-9. The Commonwealth further claims that the information about Demond Jackson and Reeder was public information and therefore not ***Brady*** material. *Id.* at 8-9. The Commonwealth adds that based on present counsel's November 28, 2016 letter to Appellant discussing Demond Jackson, Appellant cannot

- 10 -

establish that he filed his petition within one year of discovering the information. *Id.* at 7.

Appellant filed a reply brief challenging, in part, the Commonwealth and the PCRA court's suggestion that he possessed information regarding Demond Jackson in 2016 but waited until January 8, 2018, to file the instant PCRA petition. Appellant's Reply Brief at 2. Appellant asserts that the suggestion was "totally and completely false." *Id.* Appellant requested that this Court require the Commonwealth "to explain the provenance of the letter[,]" arguing:

> Appellant believes the letter was attorney-client privileged correspondence taken from Naree Abdullah's [a defendant in the killing of Azcona] by prison authorities from Naree Abdullah's belongings as part of an investigation into who knew what about Demond Jackson and when. Appellant's [present counsel] also represented Naree Abdullah. The Commonwealth has an ethical obligation to refrain from seizing attorney-client privileged correspondence. Appellant believes the Commonwealth should not reap a benefit from a violation of the attorney-client privilege.

*Id.* at 3.[11]

Our review of the denial of PCRA relief is limited to "whether the record supports the PCRA court's determination and whether the PCRA court's decision is free of legal error." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citation omitted).

---

[11] The Commonwealth filed an application to file a response to Appellant's reply brief, which this Court denied.

"[T]he timeliness of a PCRA petition is a jurisdictional requisite." ***Commonwealth v. Brown***, 111 A.3d 171, 175 (Pa. Super. 2015). A PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final" unless the petitioner pleads and proves one of three statutory exceptions. 42 Pa.C.S. § 9545(b)(1). The three statutory exceptions include the following:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). To invoke one of these exceptions, a petitioner raising a claim arising on or after December 24, 2017, must also file his petition within one year of the date the claim could have been presented. ***See*** 42 Pa.C.S. § 9545(b)(2). It is the PCRA petitioner's "burden to allege and prove that one of the timeliness exceptions applies." ***Commonwealth v. Albrecht***, 994 A.2d 1091, 1094 (Pa. 2010) (citation omitted and some formatting altered).

### ***Brady* Violations as Exceptions to the PCRA Time Bar**

Our Supreme Court has stated:

- 12 -

> Although a **Brady** violation may fall within the governmental interference exception, the petitioner must plead and prove the failure to previously raise the claim was the result of interference by government officials, and the information could not have been obtained earlier with the exercise of due diligence. Section 9545(b)(1)(ii)'s exception requires the facts upon which the **Brady** claim is predicated were not previously known to the petitioner and could not have been ascertained through due diligence. [W]e clarified that § 9454(b)(1)(ii)'s exception does not contain the same requirements as a **Brady** claim, noting "we made clear the exception set forth in subsection (b)(1)(ii) does not require any merits analysis of the underlying claim. Rather, the exception merely requires that the 'facts' upon which such a claim is predicated must not have been known to appellant, nor could they have been ascertained by due diligence."

**Commonwealth v. Abu-Jamal**, 941 A.2d 1263, 1268 (Pa. 2008) (citations omitted). A **Brady** claim may not be addressed on its merits until a PCRA petitioner establishes that he timely filed his petition. **See id.**; **Commonwealth v. Stokes**, 959 A.2d 306, 310 (Pa. 2008).

In **Commonwealth v. Small**, 238 A.3d 1267 (Pa. 2020), our Supreme Court abrogated the "public record presumption," under which information that was a matter of public record could not be deemed "unknown" under Section 9545(b)(1)(ii). **Small**, 238 A.3d at 1286. Accordingly, the fact that information is "public" will not sustain a presumption that the information was **known** to a petitioner for the purposes of an exception under Section 9545(b)(1)(ii).

However, **Small** relied on a statutory interpretation of Section 9545(b)(1)(ii), which does not necessarily apply to Section 9545(b)(1)(i). Section 9545(b)(1)(i) requires a petitioner to establish suppression, or more

specifically, "**interference** by a governmental official," to prove a timeliness exception. *See* 42 Pa.C.S. § 9545(b)(1)(i); *Abu-Jamal*, 941 A.2d at 1268; *see also Commonwealth v. Tharp*, 101 A.3d 736, 747 (Pa. 2014) (noting that "[t]o prove a *Brady* violation, the defendant must show that: (1) **the prosecutor has suppressed evidence**; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant; and (3) the suppression prejudiced the defendant" (emphasis added)). Moreover, our Supreme Court has consistently stated that a petitioner must be duly diligent in discovering the information that gives rise to his *Brady* claim. *Tharp*, 101 A.3d at 747; *Stokes*, 959 A.2d at 310 (noting that the proper questions with respect to timeliness of the petitioner's *Brady* claim was whether the government interfered with the petitioner's access to the postal service and police department files, and "whether the petitioner was **duly diligent** in seeking those files" (emphasis added)).

Here, Appellant does not dispute that his PCRA petition was untimely on its face. Instead, Appellant broadly claims that his petition qualified for an exception under Section 9545(b)(1)(i) because a defendant's failure to exercise due diligence does not defeat a *Brady* claim. However, Appellant's assertion goes to the merits of his underlying *Brady* claim and not the threshold question of whether he is entitled to relief under Section 9545(b)(1)(i). *Stokes*, 959 A.2d at 310. Our Supreme Court has consistently rejected such an approach. *See id.* Therefore, we conclude that

Appellant's principal legal argument fails.[12]  In any event, as discussed herein, the record supports the PCRA court's conclusion that Appellant failed to establish a timeliness exception to the PCRA time bar.

**Information Regarding Reeder**

With respect to Reeder, Appellant acknowledges that he was aware of Reeder's prior conviction for a 1991 burglary and the fact that Reeder received a favorable sentence for the conviction.  Appellant's Brief at 18.  Quoting this Court's unpublished memorandum from 2001 in an unrelated case, Appellant claims that the Commonwealth suppressed information that Reeder "is a known thief and robber who purportedly burglarized and stole cash, jewelry, and cocaine from a drug dealer's residence in August[] 1991."  *Id.* (citation and quotation marks omitted).  Appellant claims that the Commonwealth "only gave the jury a very sanitized version of Mr. Reeder's criminal history" and that "[t]he jury was not informed that Mr. Reeder had a very long criminal history."  *Id.*

Appellant further contends that the Commonwealth failed to disclose "benefits bestowed on . . . Reeder in exchange for his testimony."  *Id.* at 33.

_____

[12] We acknowledge that Appellant correctly argues that he is not required to show that he acted with diligence in discovering a claim of governmental interference based on a violation of the Commonwealth's duty to disclose favorable evidence under *Giglio* and *Brady*.  However, all of the cases Appellant cites in support of his argument discuss the merits of a *Brady* claim, and not the timeliness exception under Section 9545(b)(1)(i) and the PCRA's requirement that a timeliness exception must be raised within the time prescribed by Section 9545(b)(2).

- 15 -

Specifically, Appellant alleges that the Commonwealth did not disclose the quashal of a firearms offense and "benefits given Reeder's son." *Id.* at 33.

The Commonwealth responds that Appellant improperly cites to an unpublished opinion issued before May 1, 2019. Commonwealth's Brief at 8 n.5; *see also* Pa.R.A.P. 126(b). Further, the Commonwealth contends that the information that Appellant relies on "came to light in another, separate trial," and emphasizes that because the information was public, "it was not *Brady* material withheld by the Commonwealth in violation of the law or Constitution of either this Commonwealth or the United States." Commonwealth's Brief at 9.

Instantly, aside from his reliance on an unpublished memorandum of this Court in an unrelated case, Appellant has provided no information or evidence that Reeder was "a known thief and robber," who had a "very long criminal history," or that he obtained benefits for his son. Further, Appellant failed to plead or prove that the Commonwealth actually suppressed or otherwise interfered with his ability to obtain this information. Lastly, Appellant does not allege that he exercised due diligence. Therefore, under these circumstances, we discern no reversible error in the PCRA court's ruling, and we conclude that Appellant failed to state a timeliness exception under Section 9545(b)(1)(i), and that no relief is due.[13]

---

[13] In light of the absence of any "fact" supporting Appellant's allegations, we further conclude that Appellant failed to establish any basis to prove that Appellant stated a timeliness exception under Section 9545(b)(1)(ii).

### Information Regarding Demond Jackson

As to Demond Jackson, Appellant maintains that an unrelated 1996 trial concerning the killing of Francisco Azcona revealed the following:

> [Demond] Jackson committed armed robberies, and sold drugs and the police looked the other way. [Demond] Jackson had open drug charges back in 1994. [Demond] Jackson was involved in a robbery/homicide in 1994 and never prosecuted for it. Jackson was shot in the hand on December 11, 1993 and he gave the police a completely false report for which he was never prosecuted. In February 27, 1995, Jackson gave a statement about the robbery/homicide of a grocery store.

Appellant's Brief at 16-17 (citations omitted). Appellant continues, "[Q]uite remarkably none of this information about Demond Jackson was divulged by the prosecution despite the fact that [Demond] Jackson's prior out-of-court statement and his in-court testimony were used to prove a motive [at Appellant's trial]." *Id.* at 17. Appellant further asserts that "[t]he information that Mr. Jackson was an informant for the police was not divulged to [Appellant]." *Id.* at 19.

As with his previous claim, Appellant provides no evidentiary basis for his assertions that "the police looked the other way" while Demond Jackson committed "armed robberies" or "sold drugs." Moreover, to the extent Appellant's argument relies solely on Demond Jackson's testimony at a subsequent and unrelated trial, Appellant cannot establish that the failure to

disclose testimony in a later trial evidenced governmental interference under Section 9545(b)(1)(i).[14]  **See Stokes**, 959 A.2d at 310.

### Appellant's Request For Remand

As discussed previously, the Commonwealth has consistently maintained that Appellant failed to satisfy Section 9545(b)(2), which required him to file a PCRA petition within the statutory time from the date his claim could have been raised.  **See** Mot. to Dismiss at 6 n.2.  In support of its assertion, the Commonwealth relied on present counsel's November 28, 2016 letter to Appellant.  **See id.** Although Appellant objected to the use of the letter in the PCRA court, the PCRA court did not address the objection and instead referred to the letter as evidence that Appellant did not promptly file the instant petition.  As noted above, Appellant requested a remand to consider how the Commonwealth came into possession of the letter.  **See** Appellant's Reply Brief at 3.

_____

[14] Moreover, Appellant alleged no due diligence to support his claim that he discovered a previously unknown fact under Section 9545(b)(1)(ii).  Unlike the information discussed in **Small** and **Commonwealth v. Burton**, 158 A.3d 618 (Pa. 2017), Appellant's characterization of testimony in a subsequent legal proceeding falls short of stating a "fact."  For example, in **Small**, the petitioner initially relied on statements in this Court's decision discussing his codefendant's testimony at trial and a subsequent PCRA hearing.  **Small**, 238 A.3d at 1273.  The petitioner, however, eventually presented the PCRA court with evidence based on the codefendant's testimony at his own PCRA hearing. In **Burton**, the petitioner's claim relied on information that a codefendant admitted to murdering the decedent and that an innocent man went to jail for crimes the codefendant committed.  **Burton**, 158 A.3d at 622.  Instantly, Appellant relies on his own characterization of Demond Jackson's testimony without providing a foundation for his assertions, such as the transcript from the trial for the killing of Azcona.

For the reasons stated above, we find it unnecessary to consider the letter when determining that Appellant did not establish a time bar exception under Section 9545(b)(1)(i). In any event, we note that the Commonwealth asserted that it obtained the letter when a codefendant in the killing of Azcona filed it as part of a PCRA proceedings in that case. *See* Mot. to Dismiss at 6 n.2. Appellant now claims that the Commonwealth obtained the letter during a search of one of present counsel's other clients, who was also involved in the killing of Azcona. *See* Appellant's Reply Brief at 3. However, Appellant did not raise this allegation in the PCRA court. Further, Appellant has failed to produce any evidence substantiating his claim that the Commonwealth improperly obtained the letter, nor did he rebut the Commonwealth's assertion that Appellant communicated the information to a third party who then placed the letter at issue in a separate PCRA proceeding. Under these circumstances, we discern no basis to remand for a determination concerning the propriety of the Commonwealth's use of the November 28, 2016 letter.

**Conclusion**

For the reasons stated herein, we find no error in the PCRA court's conclusion that Appellant's instant PCRA petition was untimely filed. Appellant has not established meritorious arguments as he has failed to plead and prove that the Commonwealth interfered with his ability to his raise his claims prior to the instant filing. Moreover, Appellant has not raised any basis for a remand to determine how the Commonwealth came into possession of the November 28, 2016 letter. Accordingly, finding no legal error or abuse of discretion, we

affirm the PCRA court's order dismissing Appellant's petition as untimely.  *See*

***Lawson***, 90 A.3d at 4.

Order affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

*Date: 2/23/2021*